IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NANCY J. WINGATE, | ) | 4:06CV3240 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| GAGE COUNTY SCHOOL DISTRICT | ) | |
| NO. 34, a/k/a FREEMAN PUBLIC | ) | |
| SCHOOLS; and JOHN T. BRAZELL, | ) | |
| individually and in his capacity as | ) | |
| Superintendent of Freeman Public | ) | |
| Schools, | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Nancy J. Wingate, is employed as a part-time teacher by Gage County School District No. 34, more commonly known as Freeman Public Schools. She complains that she has not been interviewed or hired for full-time positions at the school district because of her age, and that she also has been discriminated against in her current employment in terms of hours, wages, and benefits. In addition to alleging a claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634, Wingate brings a claim under 28 U.S.C. § 1983, alleging that she has been denied equal protection of the laws and has been deprived of her First Amendment rights to free speech and freedom of association. The defendants are the school district and its superintendent, John Brazell, who is also sued personally.

The defendants have filed a motion for summary judgment (filing 29). Upon careful consideration of the parties' pleadings, briefs, and affidavits, I find that the motion should be granted.

As a preliminary matter, I take up the defendants' motion to strike Wingate's evidence in opposition to their summary judgment motion (filing 43). That evidence

consists of two affidavits, provided by Wingate and her attorney, Joy Shiffermiller, with several attached exhibits. Although the defendants complain that the affidavits are not signed or notarized, they bear electronic signatures in the form authorized by this court's Civil Administrative Procedure II.C.1,[1] and they constitute declarations made under penalty of perjury, which do not require notarization under 28 U.S.C. § 1746. In any event, Wingate has requested leave to file replacement affidavits (filing 45), which will be granted *instanter*.

In their motion to strike, the defendants also object to exhibits 14, 15, 16, and 21 that are attached to the Shiffermiller affidavit and identified as true and correct copies of exhibits that were marked at Wingate's deposition. A copy of the transcript of the deposition has been filed by the defendants. (Filing 30, exhibit 2A.) At her deposition, Wingate testified that these four exhibits were prepared for her own use before the Nebraska Equal Opportunity Commission.

Only one of these exhibits is referenced by Wingate in her brief, when she cites exhibit 16 as evidence that the defendants forced out or terminated four older individuals, including Sharon Alberts, Ken Cook, Bud Wingate (the plaintiff's husband), and Bonnie Waltermonth. (Filing 39, at 10-11.) Wingate's deposition testimony fails to establish that she has personal knowledge of any of the matters stated in exhibit 16, which is a prerequisite for considering the statements under Federal Rule of Civil Procedure 56(e).[2] Indeed, it appears from Wingate's testimony that the matters stated in exhibit 16 largely consist of hearsay conversations and involve speculation and conjecture by Wingate. (Filing 30, exhibit 2A, 132:21-

---

[1] The defendants have not objected to the authenticity of the signatures, as authorized by Civil Administrative Procedure II.C.1.c.

[2] It is possible that Wingate has personal knowledge concerning some of the matters stated in exhibit 16, particularly with respect to her husband's retirement, but such knowledge cannot be presumed.

134:20.) Only "such facts as would be admissible in evidence" may be considered in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e). Thus, while I will not strike exhibit 16, I do not consider it to have any evidentiary value.

Wingate also argues in her brief, without any citation to the record, that the defendant Brazell made four age-related comments that indicate a discriminatory animus on his part. (Filing 39, at 17.) This argument is objectionable on several levels. First of all, our local rules require a party opposing a motion for summary judgment to include in her brief a separate statement of material facts that contains "pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies." NECivR 56.1(b)(1). Second, although not referenced in Wingate's brief, this argument is based upon deposition exhibit 15, which was shown by Wingate's testimony to be pure hearsay; Wingate admitted at her deposition that she had not heard Brazell make any of these comments. (Filing 30, exhibit 2A, 129:9-131:23.) Third, the argument is not even accurate; Wingate at her deposition attributed one of the alleged comments to someone other than Brazell. (*Id.*, at 129:22-130:19.) For these reasons, I will disregard Wingate's argument and exhibit 15.

Because Wingate does not purport to rely upon exhibits 14 and 21, I need not consider that portion of the defendants' motion to strike. I next address the merits of the defendants' motion for summary judgment.

"In a failure-to-hire case, the prima facie case of age discrimination consists of four elements: '(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position.'" *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (quoting *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir.2003). The defendants, while not conceding that Wingate was qualified for four teaching positions she applied for

3

between April 2001 and March 2005, are willing to assume for purposes of their summary judgment motion that Wingate will be able to establish a prima facie case of discrimination in each instance. They only argue that the four individuals who were hired, despite being significantly younger than Wingate, were better qualified for the positions.[3]

Briefly, the evidence shows that Wingate is currently 60 years old, that she has a master's degree in education, and that she has been employed by Freeman Public Schools since 1969. Wingate has worked only part-time since the late 1970's, but in April 2001 she applied for a full-time elementary school teacher opening. There is no record of the number of applicants for the position, but the school district's superintendent, Brazell, determined that Wingate was not one of the top candidates and therefore would not be interviewed. Brazell states that one of the criteria for the position was that the successful candidate perform coaching duties, and that the individual he hired, a 33-year-old woman, possessed a coaching certificate, was experienced both as a coach and as a teacher, and came highly recommended. Wingate states that, to her knowledge, the advertisement for the position did not contain a coaching preference.[4] Two new positions for full-time elementary teachers

---

[3] A prima facie case creates a legal presumption of unlawful discrimination and shifts the burden to the employer to produce evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Kight v. Auto Zone, Inc.*, 494 F.3d 727, 732 (8th Cir. 2007). If the employer carries this burden, the plaintiff has an opportunity to demonstrate that its proffered nondiscriminatory reason was pretext. *Id.*

[4] Wingate has also attached to her affidavit a document identified only as "a true and correct copy of the wording of the ads placed for some of the teaching positions for which I applied." (Filing 47.) The document contains no mention of coaching duties, but there is no direct evidence linking it to Wingate's April 2001 application. In fact, a handwritten entry on this document suggests that this ad copy was published in two Sunday editions of the Omaha World-Herald, on September 26 and October 2 [sic].

were created in the fall of 2004. Wingate applied for both positions, along with 37 other applicants. Brazell again determined that Wingate was not a top candidate and would not be interviewed. For one position Brazell ultimately hired a 28-year-old woman with a master's degree and an endorsement in special education. The other position was filled by a 31-year-old woman who had taught at an inner-city school in California and who expressed an interest in performing extra duty assignments for the district, which resulted in her becoming an assistant volleyball coach. The fourth opening for which Wingate applied was a half-time elementary teacher position that the district created in March 2005 and combined with a half-time special education teacher position. Forty-five applications were received, and Brazell once again decided not to interview Wingate. A 25-year-old woman with a special education endorsement and prior experience in special education was hired. As general reasons for not interviewing Wingate for these positions, Brazell states that he considers her to be only an average teacher, that he has concerns about her ability to handle large groups of students, and that the school district would have been required to find a replacement part-time employee had Wingate been given a full-time position.

It is the employer's role to identify those strengths that constitute the best qualified applicant. *Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006). This is so because "the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Id.* (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). Thus, to the extent Wingate argues that Brazell was wrong to discount her years of teaching experience and masters degree, or to treat her existing employment with the school district as a negative factor when making hiring decisions, these are not arguments that will serve to defeat the defendants' summary judgment motion. Brazell has stated legitimate, nondiscriminatory reasons for each hiring decision he made.

In discrimination cases, once an employer offers a legitimate reason for the adverse employment action, the plaintiff must present evidence that the reason was pretextual. *Christensen*, 481 F.3d at 1094. Wingate "can avoid summary judgment only if the evidence considered in its entirety (1) create[s] a fact issue as to whether [the defendants'] proffered reasons are pretextual *and* (2) create[s] a reasonable inference that age was a determinative factor in the adverse employment decision." *Thomas v. Corwin*, 483 F.3d 516, 529 (8th Cir. 2007) (quoting *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005) (emphasis in original)).

The only fact issue created by the evidence in this case is whether the first job opening involved any coaching duties. Brazell claims that it did, but Wingate says that to her knowledge the job was not advertised in this manner. Wingate's lack of knowledge may be sufficient to cast some doubt on the truthfulness of the reason given by Brazell for the hiring decision, but, even assuming that the April 2001 job opening did not actually require someone with a coaching certificate, it cannot reasonably be inferred from the available evidence that Wingate's age played a part in the hiring decision.

Wingate, of course, also disputes Brazell's assessment of her teaching abilities, but there is no evidence in the record from which a jury might reasonably conclude that Brazell is being untruthful when he opines that Wingate is an average teacher. In fact, Wingate's own evidence includes a written evaluation that Brazell prepared in February 2005, in which he rated Wingate as "proficient" in all categories (as opposed to "distinguished"). (Filing 48-4, at 5.) Consistent with his affidavit, Brazell also noted in the written evaluation that Wingate had better control of her classroom when she was working with fewer students. (*Id.*, at 4.)

In addition to her "failure-to-hire" claim, which fails because there is no satisfactory evidence of pretext, Wingate complains that she was discriminated against during the 2001-2002 school year when she was offered, and accepted, a

part-time paraeducator position at the school district while retaining her part-time teaching position. As I understand her argument, Wingate complains that this was an adverse employment action because she did not receive the same pay as a full-time teacher, and because her work schedule was changed from 3 days a week to 5 days a week, which caused her to lose benefits and prevented her from working as a substitute teacher at another school district. Wingate also complains that the paraeducator position was discontinued during the first quarter of the 2002-2003 school year, and was eliminated altogether after that school year. The paraeducator position was funded by a short-term Title I school improvement grant, but Wingate appears to contend that the school district should have obtained Title I funding for a full-time teaching position for her. She also alleges that her performance evaluations suffered after she complained about not receiving teacher pay for her part-time work as a paraeducator. Even assuming that Wingate's suffered an adverse employment action in connection with the paraeducator position, I am unable to find any evidence that her age was a consideration by the district. I also find no evidence that Wingate made any complaint about age discrimination that might support a retaliation claim.

Wingate's First Amendment claims are also without merit. She was carefully questioned at her deposition about her "free speech" claim and stated that it is limited to: (1) complaints that she made to Brazell about the part-time Title I paraeducator position and not being paid as a full-time teacher; (2) her unsuccessful applications for the four full-time teacher positions; (3) her request for an explanation from Brazell as to why she was not interviewed for those positions; and (4) a meeting with a school board member in the fall of 2001 to request that she be made a full-time Title I teacher. With the possible exception of statements that Wingate allegedly made to the school board member about the district's need for a full-time Title I teacher, these are not matters of public concern. Wingate also says that the only retaliation she suffered was to have Brazell ignore her, or, in the case of her meeting with the school board member, to have Brazell angrily inform her afterward that he did not like her going behind his back. Wingate's insubordination is not protected

by the First Amendment. *See Roberts v. Van Buren Public Schools*, 773 F.2d 949, 956 -57 (8th Cir. 1985) (finding as a matter of law that grievances filed by teachers over funding issues that had already been decided by school administration were not protected speech).

Finally, Wingate testified that her "freedom of association" claim is based on a belief that her alleged inability to get full-time employment with Freeman Public Schools is attributable, in part, to the fact that her husband filed a grievance over his dismissal as wrestling coach in the summer or fall of 2004, and that he also filed a professional practices complaint against the school principal (who is not a defendant in this action) in December 2004. To establish her First Amendment retaliation claim, Wingate must prove that her protected associational interest (*i.e.*, her marriage) was a substantial or material factor in her employer's decision to take an adverse employment action. *See Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007); *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007). If this showing is made, the burden shifts to the employer to demonstrate that it would have taken the same action regardless of her First Amendment activities. *Id.* Apart from a loose correspondence between the dates of her husband's actions and the dates that some of her applications for full-time employment were rejected (*i.e.*, in the fall of 2004 and in March 2005), Wingate has not produced any evidence to show that her marriage was a substantial or material factor in the defendants' hiring decisions. I therefore find and conclude that she is unable to establish a prima facie case. *See Davison*, 490 F.3d at 657 n. 6 (noting that "temporal proximity alone generally will not suffice to create a genuine issue of fact on a retaliation claim").

Accordingly,

IT IS ORDERED that:

1. Defendants' motion to strike (filing 43) is granted in part, and denied in part, as follows:

    a. Paragraphs 1, 2, 3, and 4 of the motion are denied;

    b. Paragraph 5 is granted to the extent that Defendants' objections to exhibits 15 and 16 are sustained, but is otherwise denied without prejudice; and

    c. Paragraph 6 is granted to the extent that Defendants' objection to unsupported statements appearing at page 17 of Plaintiff's brief is sustained, but is otherwise denied without prejudice.

2. Plaintiff's motion for leave to file replacement affidavits (filing 45) is granted *instanter*.

3. Defendants' motion for summary judgment (filing 29) is granted, and final judgment shall be entered by separate document.

September 28, 2007.        BY THE COURT:

                           s/ *Richard G. Kopf*
                           United States District Judge